Bland, Chancellor.
In this case the defendants, Thomas Magill, and Thomas N. Harding, having filed their answers, and entered on the docket notice of a motion at the next term to dissolve the injunction issued in the said case, it is ordered, that the said motion stand for hearing at the next term, provided a copy of this order be served on the complainant or her solicitor before the twentieth day of June next.
A copy of this order having been served as required, and no counsel appearing for the plaintiff, the motion to dissolve the injunction was submitted on the part of the defendants, Magill and Harding.
11th August, 1825. — Bland, Chancellor. — An injunction, if prayed for by the bill, may be granted in any case on the bill alone, before a subpoena has been issued, or the party summoned; except to stay proceedings at law in an action of ejectment by a lessor, under the act of 4 Geo. 2, c. 28, s. 3.; or to recover mortgaged property under the act of 7 Geo. 2, c. 20, in which cases no relief, or injunction can be granted before the defendant shall have been summoned and heard.(a) But in no case can an injunction be granted on the bill alone, unless it be verified by the affidavit of tire plaintiff; or of one of the plaintiffs, where there are more than one; or, if the plaintiff be not a resident of the State, by the affidavit of some third person, who especially shews how he happens to have a knowledge of the facts set forth in the bill; or by some other testimony sufficient to induce the Chancellor to credit the bill for the truth of its statements.(b)
In ordinary cases the injunction is simply granted as prayed; and, in such cases, the defendant may, immediately upon filing his answer, give notice to the plaintiff of a motion to dissolve the injunction to be heard at the then next term. If the answer be filed *181 during the sittings(c) of a term, this notice can only be given by an entry of it upon the docket, of which the plaintiff is bound to take notice; or, if not then entered, it can only be put upon the docket at the next sittings ; and so on, from term to term. But, if the answer be filed after the close of the sittings of a term, then the defendant must make, such an entry upon the docket, and also obtain a special order, such as that which has been passed in this case; and must produce proof of its having been served as required, before his motion can be heard.
The defendant may, during the sittings of a term, at the same time he enters upon the docket a notice of a motion to dissolve the injunction, if the case be so situated, that it lays with the plaintiff next to proceed, also have entered a rule further proceedings, by the next term; so as to compel the plaintiff to proceed with his case, in addition to his shewing cause upon the motion to dissolve. And if the plaintiff excepts to the sufficiency of the answer, such exceptions may be taken up and decided at the same time, and together with the motion to dissolve.(d) After the notice of a motion to dissolve has .been given, in either of those modes, and the rule further proceedings has been entered, the defendant may, at any time, after the specified period has elapsed, which is the first four days of the then next term, take advantage of both, at the same time, during the sittings of any term, so as to have the injunction dissolved, and the bill dismissed at once; without giving any fresh notice, or laying a new rule.(e)
The motion is to dissolve, unless cause shewn by the plaintiff; and therefore on the hearing of it, the matter is opened by him, then the defendant is heard, and the argument is closed on the part of the plaintiff. If the plaintiff fails to appear and shew cause, the injunction may be dissolved on such default, without any consideration by the court, of the bill and answer; which will become absolute at the close of the sittings of the term unless cause shewn. But, if the Chancellor is called on, during the sittings, as he may be, for his judgment upon the motion to dissolve, and he orders the injunction to be dissolved, then it will not, on any account, be reinstated merely on the same bill and answer.
*182 In extraordinary cases, however, the course of the court has always been varied to suit the emergency, or the peculiar circumstances. (e) *183 Where the equity of the bill appears to be doubtful ; or where the magnitude, and nature of the subject enjoined *184 is such as to require a hearing without delay; it being of a public concern, or an extensive work in which a num *185 ber of people are daily employed, as ,a ferry, a turnpike road, a canal, a street, a furnace, a joint stock cotton factory, *186 &c.;(f) or where there are many defendants who are widely dispersed, or some of whom are nonresidents, and it appears, from *187 the statement in the bill, that the facts rest altogether within the knowledge of one or two of them, the Chancellor always, in granting the injunction, specifies the time and terms upon which a motion for a dissolution may be heard. It is declared, that the motion may be heard without answer, or - immediately at the same term, or during the sittings of the next term after the filing of the answer, without notice; or at any time, on giving so many days notice, after filing the answer; or on the answer of one or more of the defendants before the others have *188 answered. (g) And for the purpose of apprising the defendant of those special terms, upon which the injunction has been granted, *189 the register is directed to endorse, or send a copy of the order to be served along with the writ of injunction. (h)
*190 It is an ancient and well settled general rule, that where there are several defendants to the bill, no motion to dissolve the injunc *191 tion can be beard until all of them have answered. (i) But to this, as to all other general rules, there are exceptions. As where the *192 trustee and cestui que trust were both made defendants, and the trustee would not answer, a motion to dissolve was permitted to be *193 made on tbe answer of the cestui que trust alone; and indeed where there appeared to have been fraud and collusion, the cestui que trust, although not a party to the suit, was allowed to move for a dissolution of the injunction;(j) and the injunction may be dissolved as against some of the defendants only; or it may be dissolved on the answer of an- insolvent, who has no interest in the matter, upon his speaking to facts peculiarly within his own knowledge before his insolvency ;(k) and so where it appears from the nature of the case, that the responding defendant is the only one who can speak, from his own knowledge, in relation to the facts on which the injunction rests ;(l) as where the defendants who have not answered are infants ; and so too where it appears, that the answer of a nonresident defendant cannot be material as to the facts on which the injunction is founded.(m)
*194 In the case under consideration the equity arises out of the facts as alleged in the bill, that Harding and Magill have not only *195 fraudulently concealed and disposed of property which ought to hare been applied in satisfaction of the debt with which the *196 plaintiff is charged; but that they have done so, and indulged and settled with Harding, who was the principal debtor, in a manner *197 very prejudicial to the testator of the plaintiff, who was only the surety of Harding; and, therefore, that the plaintiff should be discharged. In answer to this statement of facts, Magill, .as to some most material particulars, responds merely by way of hearsay from the defendant Gittings ; and the answer of Harding, looking to the allegations of the bill, is that of a particeps fraudis, and as such cannot be allowed to be of any avail to Magill, the creditor *198 and alleged party to the fraud. (n) The loan of the $500 was made by the defendant Gittings ; the note for it, on which the judgment at law was obtained, was given to him; and it is admitted, that he, as having been privy to the whole transaction, is able to speak of the facts from his own knowledge; and, therefore, it is important that he should answer, as well because he is disinterested, having settled his final account and been discharged as guardian, as because Magill, who claims under him, will be bound by his answer.(o)
It is true, that a defendant has no direct means of enforcing an answer to the bill from his co-defendant; but, he may urge forward the plaintiff to do his duty in that particular; and, certainly, at the instance of a defendant anxious to have the restriction of an injunction removed, the court would suffer no unreasonable delay from the plaintiff. A responding defendant may lay the plaintiff under a rule further proceedings, which the court will not hesitate to enforce so as to compel him to extract an answer from a tardy co-defendant with as little delay as possible; or else the bill may be dismissed and the injunction dissolved ;(p) for, in equity as at *199 law, where there aré necessarily several defendants, the court will not continue the restriction which has been imposed upon one of *200 them, unless the plaintiff shews, that he is using all due diligence to have all the others brought before the court.(q)
These defendants, who now ask for a dissolution of this injunction, have not yet, by a rule further proceedings, required the plaintiff to prosecute her suit without delay; and, consequently, they cannot justly complain of the injunction being continued until the filing of the answer of the defendant Gittings; which, it is evident, may bring into the case an acknowledgment of facts, that may go far to sustain, if not entirely ,to support the equity upon which the plaintiff’s 'injunction- rests. Hence, as there is now no ground to impute to the plaintiff any unreasonable neglect in the prosecution of her suit; and the answer of a defendant, under whom this creditor, Magill, claims, who, it is admitted, can speak from his own knowledge of some of the material facts charged in the bill, has not yet been put in; the hearing of the motion to dissolve cannot be taken up until his answer has been brought in; or, until it may be inferred, from the laches of the plaintiff, in not endeavouring to have it brought in, that it would contain nothing likely to sustain her case; or until such implied notice of the bill has been given to the non-responding defendant, if he, be not resident within the State, as will enable the court to proceed without his answer. (r)
*201 Whereupon it is ordered, that the injunction heretofore granted in this case be and the same is hereby continued until the coming *202 in of the answer of the defendant John F. Gittings, and until further order.
The, defendant Magill, by his petition, referring to the previous proceedings, stated, that the defendant Gittings, for a long time previous to the filing of the bill, and then did reside out of the limits of this State; .which, as he believes, was known to the plaintiff when she instituted this suit; and yet, she had not stated the fact in her bill and prayed for an order, of publication, in place of a subpmna against him; whereupon the petitioner prayed, that the plaintiff might be compelled to proceed against the defendant Gittings without delay, &c.
*203 15th November, 1825. — Bland, Chancellor. — If the plaintiff fails to proceed against the defendant John F. Gittings, for the purpose of compelling him to appear and answer, or of having the bill, as against him, taken pro confesso, or to cause publication to be made against him, as an absent defendant, on or before the tenth day of the next term, then the other defendants may again move, according to the usual course, to have the injunction dissolved.
After which the plaintiff, with the leave of the Gourt, so amended her bill as to state, that the defendant Gittings was a nonresident; and, on the 1st of February, 1826, obtained-an order of publication against him in the usual form. On the 27th September, 1826, the defendant Gittings filed his answer, after which the motion to dissolve was renewed.
3d March, 1827. — Bland, Chancellor. — This case having been submitted on the motion to dissolve the injunction, and all the defendants having now so answered, as completely to remove every ground of equity set forth in the bill, it is Ordered, that the injunction heretofore granted be and the same is hereby annulled and dissolved.

 Todd v. Pratt, 1 H. & J. 465; Eden. Inj. 85.

 Moore’s Lessee v. Pearce, 2 H. & Mch. 239; Schermehon v. L’Espenasse, 2 Dall. 360; 2 Harr. Pra. Cha. 221; 1 Cain. Ca. Err. 1.

 See ante, 126, note (o).

 Alexander v. Alexander, MS., 13th Dec. 1817; Eden Inj. 73.

 2 Mad. Chan. 385; Naylor v. Taylor, 16 Ves. 127; Bishton v. Birch, 2 Ves. & Bea. 40; James v. Biou, 3 Swan. 244; Farquharson v. Pitcher, 3 Russell, 383.

 Eden Inj., 235.
Bryson v. Petty. — The hill, filed on the 13th of May 1786, by Andrew Bryson against John Petty and Thomas Rutland, states, that the plaintiff was the master and commander of the ship Kitty, then lying in the harbour of Annapolis, of which the defendants were the owners; that the plaintiff had made several voyages in the ship, as master; and been under the necessity of making sundry disbursements, and incurring considerable expenses on account of repairs, &c. for the ship ; that the defendants had refused to account with, or reimburse him the amount thereof; and had, by a writ of replevin, taken the ship, with her cargo of salt, from his possession; were about to send her out of the country, and to go themselves beyond the jurisdiction of this court. Prayer for general relief; for an injunction to prevent the removal of the ship and cargo; and for a ne exeat to prohibit the defendants from leaving the State. This bill was sworn to in the usual general manner. And there does not' appear to be any other specification of the claim or amount due than by a general reference to the exhibits.
13th May, 1786. — Rogees, Chancellor. — Issue subpoena, ne exeat, and injunction as prayed, with liberty, nevertheless, for the said John Petty to proceed to the trial of his replevin at law, but to stay execution on any judgment he may obtain therein, until further order.
The defendant, Petty, by his petition, stated, that he had filed his answer, that the ship Kitty belonged to him and his partner in England, Joseph Yates; that the defendant Rutland had no interest in her; that the petitioner was anxious to send her to Europe, and had accordingly written to have insurance made on her voyage ; that, while here idle, she was decaying, and would be soon destroyed by the worms; that he was willing to pay what might be found due the plaintiff, and prayed that the injunction might he dissolved on his giving bond, &c.
11th June, 1786. — Rogees, Chancellor. — Ordered, that an account be adjusted, made and taken by auditors of and upon the several transactions mentioned, and. set forth in the hill, answer and exhibits filed in the said cause.
By consent, three persons were appointed as auditors, &c.
24th July, 1786. — Rogees, Chancellor. — Upon hearing the petition of John Potty, one of the defendants, in presence of the parties, by their counsel; it is ordered, that the injunction issued in this cause, so far as it relates to the ship Kitty, be dissolved upon the said John Petty giving bond, with good surety, to he lodged in and approved by this court, to abide by, observe and perform the final decree of tilia court; but that the injunction shall continue and remain in full force as to the salt in the said injunction mentioned.
On the 4th December, 1786, before me the subscriber, one of the justices of the peace for said county, personally appeared William Jessop Vickers and made oath, that on the thirtieth day of November last'he, as clerk on a commission from chancery, wherein Andrew Bryson is complainant, ánd John Petty and Thomas Rutland are defendants, issued a summons signed Thomas Harwood and John Muir, commissioners appointed by the High Court of Chancery, to examine evidences on behalf of Andrew Bryson, complainant, and John Petty and Thomas Rutland, defendants. Which summons was directed to the sheriff of Calvert county to execute, and is in the words and figures following, to wit:
“ Maryland, set. — The State of Maryland, to William Richards, now of Calvert *183 county, greeting: — You are hereby commanded, that all excuses set apart you personally be and appear before the commissioners appointed by the High Court of Chancery, at the city of Annapolis, on Saturday the second day of December next, to testify on behalf of Andrew Bryson complainant, and John Petty and Thomas Rutland defendants: hereof fail not as you will answer the contrary at your peril. Witness our hands this 30th day of November, 1786. — Thomas Harwood, John Muir, commissioners; To the sheriff of Calvert county.”
Which said summons was duly served as appears by the return on the back thereof, to wit: — “ Summoned. W. Allen, sheriff.” This deponent saith, that although the said summons was duly served as aforesaid, the said William Richards neglected to appear according to the direction thereof, which prevented the said commissioners proceeding in the execution of said commission.
4th December, 1786. — Rogers, Chancellor. — Issue attachment of contempt against the said William Richards, returnable next court.
No further proceedings being had under this order; the case was brought before the court for final hearing.
28th March, 1787. — Rogers, Chancellor. — Decreed, that the defendant Petty pay to the plaintiff the sum of £647 14s. 9d., with interest from 7th April, 1786, until paid, and costs; and further, that the defendant Petty give bond, to be approved by the Chancellor, to indemnify the plaintiff for any claims that may be made against him on account of the ship Kitty; and that the injunction so far as respects the prosecution of the replevin remain in full force, Ac.
The defendant John Petty, having been served with a copy of the decree; the plaintiff, by his petition, stated, that the defendant Petty had appealed, but had not given bond; that he had not paid the sum of money decreed; that he had not given the bond of indemnification decreed; and that he had disposed of the salt, on which the plaintiff had a lien, in violation of the injunction. Prayer for a ca. sa. against Petty for the sum decreed; and for attachments for not giving the bond of indemnification, and for a breach of the injunction.
2d May, 1787. — -Rogers, Chancellor. — Ordered, that ca. sa. and attachment to compel indemnification according to decree issue according to the prayer of the plaintiff’s petition.
Afterwards the plaintiff called on the sheriff' to bring in the defendant under the ca. sa., and the defendant moved to set it aside.
24th May, 1787. — Rogers, Chancellor. — The ca. sa., in this case, issued with propriety, and the plaintiff ought to be at liberty to call it; and the defendant John Petty being brought into court, he is thereupon, on the prayer of the plaintiff, committed in execution of the decree aforesaid to the sheriff of Ann Arundel county.
Who being present took charge of him accordingly, and committed him to close custody in a chamber of the house of George Mann, (the tavern,) the same being used as a gaol.
McMechen v. Story. — This bill was filed on the 23d of December, 1806, by David McMechen against Thomas Yates, Alexander Story, and The Mayor and City Council of Baltimore, to obtain an injunction to stay proceedings at law in a suit which had been instituted in the name of The Mayor and City Council of Baltimore, *184 for the use of Alexander Story. It is stated in the bill, that the plaintiff in January, 1799, became bound by a joint and several bond to the city of Baltimore as surety of the defendant Yates as an auctioneer; that afterwards separate suits were brought on the bond against Yates, and the plaintiff, in the name of the city, for the use of Story; that Yates repeatedly assured the plaintiff, that the cause of action should be settled and adjusted, and that he, Yates, would cause those suits to be defended, and had employed a lawyer for that purpose; that the attorney, instead of making any defence, by the fraudulent contrivance and misrepresentation of Yates, withdrew the plea of general performance of all the stipulations in the condition of the bond; and in May, 1803, confessed judgment for the sum of $4154 30, with interest from the first of January, 1800, and a stay of execution until the first of August, 1803 ; which judgment was afterwards affirmed by the Court of Appeals; that the claim of Story against Yates, upon which those suits were brought on the bond, was for goods sold by Yates as auctioneer, for Story, the price of which he had not paid over; which, not being a claim covered by the terms of the bond, according to a fair construction of the city ordinance, in conformity with which it was given, this plaintiff cannot be held liable for it; because that ordinance requires a bond from auctioneers to secure the payment of the auction duties made payable to the city, and nothing more. The bill having been filed and submitted,
23d December, 1806. — Kilty, Chancellor. — It is ordered, that subpoena and injunction be issued as prayed. But the Chancellor considers it a doubtful case ; and therefore will, during the first four days of February term next, or of any term thereafter, hear a motion for its dissolution. And the register is directed to endorse a copy of this order on the injunction. _
On the 27th January, 1807, the plaintiff, by his petition on oath, stated that as he had been advised his bill did not contain all the necessary parties; that he could not have the relief he was entitled to, under the general prayer of the bill, without some additional special interrogatories; that William McMechen, the attorney who appeared for the defendants in the suits on the bond, was a necessary party; and that the defendant Story was a citizen, resident of the State of New York, against whom, as such, he wished to obtain an order of publication. Wherefore he prayed leave to amend his bill.
28th January, 1807. — Kilty, Chancellor. — The Chancellor will determine on this petition during the first week of the ensuing February term, which he considers will be in time to do justice to the parties.
The plaintiff by his petition filed on the 4th of February, 1807, renewed his application for leave to amend his bill.
5th February, 1807. — Kilty, Chancellor. — The Chancellor is still of opinion, that a determination on the petition for amending the bill need not be made before the ensuing term. But as it is pressed by the complainant, leave is given to amend the bill as prayed; with the express proviso, that this leave shall not alter, or do away the order of the 23d December last, that the Chancellor would, during the first four days of February term next, or of any term thereafter, hear a motion for its disjsolution. __
On the 16th of February, 1807, the plaintiff filed his amended bill, in which he •states the fact of the nonresidence of the defendant Story; makes William McMechen a parly; and propounds to the defendants a number of interrogatories, which he *185 conceived to be important and necessary to help out the case he had set forth in his original bill.
Alter which, on the 23d of February, 1807, the defendants Yates and The Mayor and City Council put in their answers separately. Yates admits, that the judgments were rendered against him and the plaintiff as stated. But he denies all fraud and misrepresentation as charged in the hill; and introduces sundry matters in avoidance of the equity on which the plaintiff founded his claim to relief. On the 24lh of the same month the defendant McMechen answered, and stated his knowledge of the manner in which the judgments had been obtained. And on the 14th of March, 1807, the defendant Story filed his answer; Which it appears was sworn to before a notary public of the State of New York, and certified under his signature and notarial seal.
21si March, 1807. — ICilty, Chancellor. — This motion came on to he argued on a motion to dissolve the injunction, principally on behalf of Alexander Story, one of the defendants interested in, and claiming for himself or his assignee, Thomas C. Jenlcins, the money appearing due by the judgment enjoined; and has been delayed for further notes and authorities for the complainant.
Under the order of the 23d of December the defendants were entitled to malee this motion without answering, or giving notice. But whether they cannot also have the benefit of the answers filed, is a question, which it will he important, as to the practice, to determine. It was strongly contended by the complainant's counsel, that at this time no answer could be considered; and that tlie case rested on the propriety of granting the injunction on the equity appearing in the hill.
The Chancellor has seen several cases, in the time of his predecessor, of injunctions granted on similar terms ; and he has found it expedient to follow those precedents, in cases which appeared doubtful; and especially in those in which, from the application having been delayed till tbe last moment, a further delay, for the purpose of full consideration, would amount to a refusal; as it would have done in the present case. But it may he doubtful, whether, in such cases, a refusal to grant the injunction would not he the most proper course.
When the hill was presented to the Chancellor, his doubts arose as to the effect of the manner of giving the judgment; and of the bond under the ordinance of The Mayor and City Council. For there was not a sufficient charge of fraud, by Story, to justify an injunction against him; and he could not he justly made answerable for the fraud of Yates, as alleged in the hill. But supposing it possible that the law might he as stated in the hill, the Chancellor ordered the injunction to he issued, with the proviso before mentioned.
A defendant who is enjoined from pursuing his legal remedy, by the oath of the complainant to the matter stated in his hill, has a right to appear immediately, without waiting for a subpama, and to put in his answer; which, if it denies the equity, is generally sufficient to procure a dissolution. And if it comes in, so as to afford a reasonable time, an order is granted, during the vacation, for hearing a motion at the first term thereafter, on notice being given. And where, as in this case, notice is previously given, there is no rule, or principle which can render the consideration of an answer improper. Supposing the hearing to be only for the purpose of deciding, whether the injunction ought to have been granted, ought the court to disregard an answer which goes to shew, that the complainant was not in fact entitled to what he claimed ? or should the injunction be continued in opposition to such an answer, for the purpose of taking it up at the succeeding term ? The Chancellor recollects *186 some cases in which answers have been thus put in, and have been considered, without any objection having been made. And he is clearly of opinion, that the answers, as far as they are affected by this objection, form apart of the case now for its determination.
When the bill was presented to the Chancellor, he was not informed of the opinion which had been given by the Court of Appeals. A short copy only of the judgment of that court was filed, stating the affirmance, without any notice of an opinion having been given. (2 H. & J. 41.) The answer of Story has been filed since the argument; but is not considered as mailing any difference in the decision.
It is, on the whole, Ordered, that the injunction in this case shall be, after the 30th day of the present month, dissolved without further application or order. Provided, that if the complainant shall, on or before that day, pay the amount due on the said judgment, and the legal costs to the said Alexander Story, or his assigns, dr his counsel in this suit; or pay the same into this court, for the purpose of being immediately so paid, an order for another injunction will be issued, if applied for.
On the 5th of October, 1807, the bill was dismissed by order of the plaintiff. After which, Thomas C. Jenkins, by his petition stated, that he had paid the sum of $12 99 for postage, notarial seals, &c. in obtaining the answer of the defendant Story, which he prayed to have allowed to him; and, that the register be directed to tax that amount with the costs of the defendant.
10íA March, 1808. — Kilty, Chancellor. — The Chancellor is not satisfied, that this charge is properly taxable in the costs ; and the present state of the accounts is a further objection. Supposing the petition to be intended for an order to have those sums taxed in or added to the costs, it cannot be granted.

 Crowder v. Tinkler, 19 Ves. 622; Winstanley v. Lee, 2 Swan. 335.
Worthington v. Bicknell. — The General Assembly, by the act of 1803, ch. 89, appointed Thomas Bicknell, with six others, commissioners to open a road, from a point on the road leading from the city of Annapolis, round the head of South river, by Waters’ mill, and the South liver Meetinghouse, to Ashton’s ford, on the Patuxent, thence through Ogle’s plantation to intersect the road leading to Bladensburg; provided, that they, should not run it through the buildings, yards, orchards, gardens, or meadows of any one without his consent. Under the authority of this law, the commissioners surveyed the road, along- the route thus described, so a3 to pals near the-mill of John Worthington; upon which he filed: a bill in this court, on the 11th of December, 1805, in which he alleges, that the commissioners had exceeded the-authority conferred on them by this law, in locating the road in such a manner as most wrongfully, and ruinously to affect his mill, by so crossing and passing along the mill race, as to obstruct or prevent the water from flowing to it. And thereupon, prayed an injunction to prevent the commissioners from opening the road, as thus located by them. Which injunction was granted as prayed. The commissioners' answered the bill, and denied the allegations and opinions as therein set forth by the plaintiff. And the case was afterwards brought regularly before the court on a motion to dissolve the injunction.
22d December, 1806. — Kilty, Chancellor. — The motion to dissolve tile injunction in this case having been continued from the September term last, was submitted at this term on notes in writing, which, together with the proceedings, have been attentively considered.
*187 The question arising in this case is an important one as it respects the interests of the parties, and the power and jurisdiction of this court. The position laid down by the late Chancellor, and which appears to be conformable to the principles of a court of equity, was, that this court ought not to control the judgment of commissioners, in cases similar.to the present; who, when they exercise their judgment on a subject, over which the law has invested them with power; and determine on an act to which that power is competent, cannot with propriety be restrained.
The question occurs then, whether, in this case, the law has invested the commissioners with a power on the subject over which they have exeréised their judgment ? The act empowers them to survey, lay out, and open a road in the best and straightest direction; and leaves the manner of executing it to their discretion, without requiring a confirmation of their proceedings by the Levy Court, or any other tribunal. It was for the legislature to determine, whether such power should be given, and they have made no exception ; but that of the buildings, yards, orchards, or meadows, through which they are prohibited from running, without the owner’s consent. But it is alleged, that the commissioners, acting under a special authority, have exceeded the powers vested in them, by locating the road over the mill race, which is as much a building, or part of a building, as the mill house. If the. Chancellor could entertain this opinion, the injunction would certainly be made perpetual; but a mill race is, in no sense, a building, or a part of a building. (Co. Litt. 161, a.)
One of the grounds for the injunction, stated in the bill, is,' that a road equally good with that contemplated by the commissioners, and as little expensive, may be had by running it through the complainant’s land above the race and dam. But, this opinion is expressly contradicted by the commissioners. Surely this is a point on which the law has invested them with a power to decide according to their judgment; and the propriety of that judgment ought not to be questioned by this court. So that this averment, by the complainant, cannot have any weight; nor is it necessary to consider the depositions respecting it, even if, from the contrariety of that sort of testimony, furnished by the respective parties, any satisfactory opinion could be formed.
The observations of the complainant, respecting the valuation made by the commissioners, are answered by referring to the provision made by the act for an inquisition by a jury to which he might have, resorted.
Before a great public work should be impeded, by the continuance of an injunction, it ought to appear clearly and satisfactorily, that the defendants were about to act contrary to the law which gave them the power, or to do acts not sanctioned by it; or in some other way to injure the complainant, so as to come within the established principles, as a ground for their being restrained by this court.
Such a case has not been made out by this complainant, and it is therefore ordered that the injunction be dissolved.

 Jenifer v. Stone. — This bill was filed on the 29th of June, 1809, by Daniel of Saint Thomas Jenifer, administrator of Daniel Jenifer, deceased, against Travers Daniel, John M. Daniel, and Michael J. Stone, surviving executor of Thomas Stone.
The bill states, that the defendant Michael, the surviving executor, had, on the 23d of October, 1806, obtained a decree in this court against the intestate of this plaintiff, for the sum of £1119 3s. 7d.; that the defendant Michael’s testator left two daughters, his only children and heirs; one of whom, Mildred, married the defendant Travers Daniel, and the other, Margaret, married the defendant John M. Daniel; that these defendants, Travers and John, after their marriages, on the 13th of January, 1798, entered into a covenant with the executors of the late Thomas Stone, of whom the defendant Michael is the survivor, by which they, as executors, were to be saved harmless from the demands of the creditors, and discharged from all liability to the representatives of their testator ; and they, Travers and John, were to use the names of the executors, for the purpose of collecting and recovering all sums due to their testator; that this plaintiff’s intestate was warned not to pay the amount of the decree against him to this defendant Michael; in consequence of which, and being assured, and believing, that the whole amount was properly payable to these defendants, Travers and John, he paid in part satisfaction of the decree, the sum of three hundred pounds to the defendant Travers; that this plaintiff has discovered, from the books of account of his intestate, that there is a large sum due from the defendant Michael to him; that the defendant Michael had caused a fieri facias to be levied on the estate of this plaintiff's intestate, without giving credit for the amount of the book account; and had only agreed, that the payment of three hundred pounds should be suspended until he should know the result of a suit instituted, in this court, against him by Alexander Scott, for the recovery of a debt alleged to be due from his testator; and if that debt was recovered, that then he, Michael, would cause the whole amount, including the three hundred pounds, to be levied under the fieri facias ; and it was in conclusion stated, that the defendants, Travers and John, then resided in the State of Virginia. Whereupon the plaintiff prayed for an injunction to stay the proceedings upon the execution, and for general relief. The bill was sworn to by the plaintiff.
29th June, 1809. — Kilty, Chancellor. — The Chancellor, after some hesitation and doubt on the subject, has determined to order the injunction as prayed-. There would have been less room for doubt, if the former complainant, M. J. Stone, had insisted on levying, at this time, the whole sum, without allowing for the £ 300 paid to T. Daniel; but, inasmuch as the bill alleges, that although that sum is, for the present, suspended, the said M. J. Stone declares, that he will hereafter levy it, if necessary; and it is a rule of this court not to suffer a creditor to proceed to the recovery even of what is due, when he demands also what is not due; the injunction is ordered on that part of the bill.
The Chancellor does not consider the debt stated to be due from M. J. Stone to Daniel Jenifer, to be sufficiently established from the appearance of the books ; nor is he satisfied, that it is proper to be discounted in this case.
On account of the .distant residence of the defendants, T. and J. M. Daniel, a motion to dissolve the injunction will be heard without their answer.
After which the plaintiff, by his petition, prayed for leave so to amend his bill as to aver, that his intestate had paid to this defendant, Travers Daniel, through his solicitor, in further part satisfaction of the decree, the sum of $120, the vouchers of which payment this plaintiff had discovered since the filing of his bill.
*189 The defendant, by his answer, admitted the payment of the £300, as alleged, and that the decree had been to that amount satisfied; he also admitted, that the covenant had been entered into with the defendants, Travers and John, as stated; but averred, that he had not been saved harmless, as stipulated; that he had been compelled to pay large sums of money, and was still liable for other claims as executor; to meet all which he had a right to collect and retain the balance due on the decree. In regard to the allegations of the petition to 'amend, this defendant, by a separate answer thereto, and agreement, admitted the payment as. alleged. After which, the usual order nisi was passed, requiring notice to be given to the plaintiff to shew cause why the injunction should not be dissolved.
On the 22d of July, 1810, an answer was put in for the defendants, Travers and John, apparently in the handwriting of the plaintiff’s solicitor; who, by a note in writing, agreed to receive it as such without oath. By this answer these defendants admitted most of the statements in'the bill; they averred, that they had offered and were ready to indemnify the defendant Michael, according to their covenant, the copy of which, as exhibited by the plaintiff, they admitted to be correct; they stated, that they had filed their hill in this court against the defendant Michael, to compel him to account; that he is in very great pecuniary difficulties; and if he is permitted to collect the balance due on the decree, they will be wholly unable to recover it from him.
27th July, 1310. — Kilty, Chancellor. — -The motion to dissolve the injunction in this case was argued at the present term. The equity, or cause of complaint, was removed hy the answer of M. J. Stone, releasing the £300 paid to T. D’aniel. The petition to amend, which was since filed, respecting the sums paid to counsel, amounting to 120 dollars, is also answered by the agreement of M. J. Stone, to relinquish his claim to that amount. So that there would be no grounds for continuing the injunction, as between these parties only. But the question is, as to the effect of dissolving the injunction between M. J. Stone, the executor of T. Stone, and T. and J. M. Daniel, as his representatives. And on the circumstances of this case, the Chancellor is of opinion, that the interests of the latter ought to he attended to so far as to prevent the receipt hy M. J. Stone of the money due from Jenifer at present. It may he objected to the bill of T. and J. M. Daniel, filed the 2d of July, 1810, that it is not on oath; but it is accompanied by a very important paper, viz. the covenant or agreement between them and the executors of T. Stone, which would probably have been sufficient to have had the suit against Jenifer entered for the use of the former.
Considering M. J. Stone as an executor; and, therefore, acting as a trustee, he cannot be injured by the money due from Jenifer being retained until a final settlement can be made; and as to his claims, for payments made, they are not setjorth with sufficient certainty in his answer. An order ma.y hereafter he made for having the money levied, and brought into court; but, at present, it is Ordered, that the injunction be continued till further order; with liberty, however, for the complainant, Jenifer, to bring into this court the sum due, after deducting the discounts claimed, and allowed, as appears hy the proceedings. The answer of T. and J. M. Daniel to the hill of D. of St. Tho. Jenifer, has not been 'considered in making the above decision; and the manner in which it is put in is liable to some exceptions.
After some other unimportant proceedings, the case seems to have abated by the death of the parties.

.) Diffenderffer v. Hillen. — This suit was instituted on the 10th of December, 1808, hy John Diffenderffer, Charles Tinges, and George Smith, against John *190 Hillen and John Marsh. The bill states, that before Baltimore was incorporated as a city, the then commissioners of the town had so graded Baltimore street continued and York street, from Jones’ falls to Harford street, as that the water, falling into them, was conveyed in nearly equal proportions in the opposite directions to Jones’ falls and Harford run; according to which graduation they had regulated their improvements ; that by the act of 1796, ch. 68, s. 9, the grade of no street can be altered without the consent of the proprietors of the lots adjoining such street; that without the consent of these plaintiffs, and contrary to law, the defendants, as city commissioners, had altered the grade of Baltimore and York streets, whereby there is, and will be a very considerable increase of water and filth conveyed to Jones’ falls before their property, and that of others in like situation ; which, especially in the summer season, is matter of no small moment; and, that the defendants are now activelv engaged in cutting down and adjusting those streets to the new graduation. Upon which the plaintiffs prayed for general relief, and for an injunction to prevent the alteration of the grade of those streets.
10th December, 180S. — Kilty, Chancellor. — Erom a perusal of this bill, and an examination of the act of Assembly referred to, the Chancellor is at present of opinion, that there is ground for the complaint made ; and that the injunction ought to be granted. Whether the act of 1797, ch. 54; makes any alteration of the provisions in the 9th section of the act of 1796, ch. 68, he is not prepared to say. But to prevent the injury which might arise by the interference of this court, in case the commissioners should appear- to be acting within their authority, it is to be understood, that a motion to dissolve the injunction will be heard at any time, on such notice as shall be directed, either before, or after answer. The injunction to be issued as prayed,, and this order copied thereon.
On the 12th of December, 1808, the defendant Hillen alone put in his answer, in which he stated, that the alteration in the grade of the streets, as stated in the bill, had been made with the consent of the proprietors of the immediately adjacent lots; that the plaintiffs owned no lots nearer than from six to nine hundred feet from those streets; and that these defendants then had employed nearly twenty labourers, with carts, making the alterations in those streets; which, when made, would be highly beneficial to the public in general. Upon which this defendant moved to have a day appointed to hear a motion to dissolve.
12th December, 1808., — Kilty, Chancellor. — Ordered, that a motion for dissolving the injunction be heard on the 20th instant; provided a copy of this order be served on either of the complainants, or their solicitor, on or before the ISth instant.
The plaintiffs’ solicitor admitted the service of a copy of this order, and the motion came on to be heard.
20th December, 1808. — ICilty, Chancellor. — The motion for the dissolution of the injunction issued on the 10th instant was, according to appointment, argued on this day.
Although the presumption is, and ought to be, that persons acting under the charter and ordinances of a corporation, will conform to the limitations therein contained; yet when a case is stated, on oath, which apparently shews a contrary proceeding, it becomes the duty of this court to interfere. The answer of the defendant, denying the grounds of the application, is, however, entitled to equal attention. The Chancellor was under the impression, from the bill, that some of the parties held property- *191 immediately, or very nearly fronting on the part of the street in which the work was to he done. And he was not, nor is he now satisfied, that the consent of every person, holding property fronting on Baltimore street and York street, was necessary to he obtained. And, from the exhibits filed with the answer, there is reason at least to doubt whether the commissioners have acted wrong; if not to believe, that they have-acted right.
It is thereupon adjudged and ordered, that the injunction heretofore issued in this case be and the same is hereby dissolved; leaving the parties to proceed in equity or at law as they may think proper. _
After which, on the 7th of July, 1809, this suit was dismissed, with costs, by the complainants’ solicitor. Whereupon the defendants obtained a bill of their costs from the register, and moved, that the plaintiffs might be, ordered to pay the amount.
11th March, 1811. — Kilty, Chancellor. — On motion, on behalf of the defendants, it is Ordered, that the complainants, John Diffenderffer, Charles Tinges, and George Smith, pay to the defendants, or either of them, or to their solicitor, or their or his order, the sum of twenty dollars fifty seven and one-half cents ; being the amount of the costs taxed by the register on the dismissal of the bill of the said complainants; or that they shew cause to the contrary on or before the 10th day of April next. Provided a copy of this order be served on the said complainants, or either of them, or left at the place of abode of any one of them, before the first day of April next.

 Pra. Reg. 200; 2 Harr. Pra. Chan. 263; 3 Bac. Abr. 658; Eden Inj. 66; Wright v. Nutt, 2 Dick. 691.
Stewart v. Barry. — This hill was filed on the 31st of August, 1809, by James Stewart, William Lorman, and William Gwynn, as executors of the late William Evans, against Robert Barry, John Stewart, David McMechen, and Thomas-Yates— in which it is stated, that the defendants Barry and Stewart were the assignees of the defendant Yates, a bankrupt; that as assignees they set up for sale, at public auction, a piece of land called Springfield, the title to which was represented as clear and unquestionable, and the late William Evans became the purchaser, for the sum of $29,169 82; that all these transactions took place with the knowledge and concurrence of the defendant McMechen, who held a mortgage on the land, at the time, to secure a large debt due to him; that the late William Evans was put into possession of the land; and, under an impression that the title of the vendors was good, he had paid a part of the purchase money; that it has been since ascertained, that the title is much encumbered and entirely defective; and that since the death of Evans, the assignees of the bankrupt had instituted suit, and recovered judgment against these plaintiffs for the balance of the purchase money. Whereupon the plaintiffs prayed, that the sale might be vacated, &c.; and, that they might have an injunction to Stay the proceedings at law against them.
It appears, that at the time when this bill was filed, the Chancellor was absent; and, according to the long established course, under such circumstances, it was submitted to a solicitor of the court, who was in no way concerned in the case; who declared, and endorsed it on the bill as his opinion, that it contained sufficient equity to authorize the issuing of an injunction. Upon which sanction the register issued the injunction as prayed, subject to the opinion of the Chancellor, on his return to the seat of the court. And on the 7th of September, 1809, the solicitor’s order for the injunction was confirmed by the Chancellor himself.
On the 5th of December, 1809, the defendant McMechen put in his answer, in *192 which he admits the sale as staled; but denies, in general terms, the alleged delects in the title; and then sets forth various particulars, not responsive to the bill, going to shew, as he avers, that the vendors had a good and valid title; that he alone, from the peculiar nature of the case, was interested in having the injunction speedily-dissolved, &c. Upon the filing of his answer, and before the other defendants had answered, he entered upon Hie docket and gave notice of a motion to dissolve the injunction.
On the 20th of February, 1S10, the other defendants put in their answers separately, in which they admit, that the sale was made as stated by the plaintiffs; but deny that there was any misrepresentation, or defect of title. After which, the motion to dissolve the injunction was brought on to be heard, on the notice which had been given immediately after filing the answer of the defendant McMechen.
7th March, -1810. — ICilty, Chancellor. — Before the expiration of the time limited by the order, passed on the first or second day of the term for the dissolution of the injunction nisi, the counsel for the complainants shewed cause to the contrary, which was noted on the docket. It was objected, on their part, that the notice of motion to dissolve was entered on the answer of the defendant McMechen only; and, that the answers of the other defendants were afterwards put in without a repetition of the notice. The Chancellor considers, that, according to the rules and practice of the court, the defendants ai-e not entitled to a hearing of their motion at this term. -It is thereupon continued till the next term, tó be then heard; but it will be in the power of the defendants, if they think proper, to give notice also of the motion to be then made. _
The defendants then gave notice of a motion to dissolve the injunction at the next term, when it was regularly brought before the court.
9th July, 1810. — Kilty, Chancellor. — The motion for dissolving the injunction in this case, came on to be argued according to the notice given, since which the bill, answer, and exhibits, have been considered.
The ground of the complainants’ bill was, that a good tide could not be made to the land purchased by the testator, William Evans, from Barry and Stewart, the assignees of Yates. It is alleged therein, that at the time of the said sale, and before, it was publicly stated by Yates, the acting auctioneer, that the title was unquestionable. This fact is not expressly denied, either by tire answer of Yates, who is made a defendant, or of McMechen, who is principally interested in the suit; although they allege, that the right of the assignee, and of the mortgagee, was all that was sold. But the equity of the complainants does not rest on that fact alone; as the question of the title is proper to be considered without any such express statement or assurance respecting it. Although it was contended in die argument, that the right only being sold, the purchaser was bound to take it at his risk. This position cannot be admitted, except in cases where the title was expressly stated, or known to be doubtful, and a reduced price was given accordingly.
It does not appear, from the several answers, that there is such a clear title to the land as those who claim under the purchaser ought to have before the money is paid. The legal title set up being only as to a part, and the equitable one being somewhat uncertain. The defendant McMechen states, that he believes Yates had a good and valid title to the land called Springfield, and that he bought the greater part from the Baltimore Company, the deeds for which are regularly acknowledged and recorded; and the equitable title to a part derived from James McFadon is also set forth. The defendant Yates refers, likewise, to the Baltimore records. But it cannot be expected, *193 that the injunction of this court should be dissolved upon the 'strength of titles thus set out, and not answering the Interrogatories in the bill.
The conduct and expression of Evans, in his lifetime, are relied on to prove his assent to the purchase, after the doubts us to the title were known. But the answer of the assignees shews only, that, although he was advised to the contrary, he was determined to abide by the contract, by paying for that part to which a good title could be given; and that he wished to receive a good title for the whole. And the directions in his will do not prove his consent to taire the whole as it stood. Considering that the equity, on which the injunction was granted, still subsists, to wit, the uncertainty of obtaining a valid title after the payment of the purchase money; and its application to the claim against the land.
It is ordered that the said injunction be continued till the final hearing, or further order.
Without any further proceedings being had in this case, it appears to have been some time afterwards dismissed by the plaintiffs.

 Nugent v. Smyth, Mosely, 354.

 Joseph v. Doubleday, 1 Ves. & Bea. 497.

 Boheme v. Porter, Barn. Chan. Rep. 352; Rowcroft v. Donaldson, 1 Fow. Ex. Pra. 286.

 Sholbred v. Macmaster, 2 Anstr. 366.
Williams v. Hall. — It appears, that a bill had been filed previous to the institution of this suit, by James Williams and Solomon Hillen, against Edward Hall, David Stewart, and David C. Stewart, to obtain an injunction, which having been filed and submitted to the Chancellor, he granted the injunction, but suggested, that the bill seemed to be too indistinct and merely argumentative in regard to the plaintiffs not being interested as partners with the Stewarts. In consequence of which the plaintiffs afterwards, hy their petition, stating, that no process had been issued, or served, prayed leave to withdraw their hill and exhibits from the files of the court. Upon which, on the 6th of July, 1809, the leave was granted as prayed.
This hill was filed on the 15th of July, 1809, hy the same plaintiffs, against the same defendants. From which it appears, that the plaintiffs were partners in trade, which they conducted hy Williams then residing in the West Indies, and Hillen in Baltimore; that Hall also then resided in the West Indies, carrying on trade there as *194 a merchant; and that the Stewarts were residents of Baltimore, and partners in trade under the firm of David Stewart & Son ; that this firm of David Stewart & Son had sent the schooner Holstein with a cargo on a voyage to the West Indies, consigned to Hall, who had sold that outward cargó; and, by various dealings in relation to that vessel, had made sundry advances, by which those who owned her, and were jointly concerned in her, had become indebted to him in a very considerable sum ; that the defendant Hall had instituted a suit against these plaintiffs, with David Stewart & Son, as the joint owners of that vessel, and recovered judgment against them for the sum of $13,4-19 53 and costs ; which judgment had been affirmed by the Court of Appeals; and on. execution being issued thereon the plaintiffs had superseded the judgment, and given bond with surety according to law; that the defendants David Stewart Sc Son had become bankrupts, in consequence of which the whole liability and weight of the judgment had fallen upon these plaintiffs ; that the plaintiffs were in truth not partners of David Stewart Sc Son, or in any way interested with them in the schooner Holstein; which fact, although well known to these defendants, these plaintiffs had been unable to shew and establish on the trial at law. And for the purpose of more perfectly illustrating and explaining the whole transaction, they prayed that the defendants might be ordered to produce their books of accounts, &e. Wherefore they prayed for an injunction to stay the proceedings at law, for general relief, See. The plaintiffs, with their bill, offered an injunction bond with surely in the usual form, reciting, in the condition, the judgment of the Court of Appeals, but taking ho notice of the supersedeas.
15th July, 1819. — Kilty, Chancellor. — -Let subpeena and injunction issue in the usual form according to the prayer in the original bill. On further consideration of the bill on which the injunction was ordered as above, the Chancellor thinks it proper to state, that he will hear a motion for dissolving, if made according to the practice of the court in other respects, without waiting for the answer of Stewart & Son, who may not be interested in the event of the suit, and whom the other defendant cannot compel to answer.
On the 15th of February, 1810, the defendant Hall filed his answer, in which the facts and 'circumstances set forth in the bill are fully answered, explained away, or denied; and upon the filing of it, he caused to be entered on the docket a motion to dissolve the injunction ; and on the same day, obtained the usual order authorizing notice to be given to shew cause. But soon after obtaining this order, on discovering that the' injunction bond was, as he conceived, defective, he moved for an immediate dissolution of the injunction on the ground of its having been improvidentiy granted.
28th February, 1810. — Kilty, Chancellor. — In this case, which stands on notice of a motion to dissolve the injunction, it was urged by the counsel for the defendant, that independent of the main question, the injunction ought to be immediately dissolved on account of the bond not covering tire judgment by supersedeas, which stands injoined with the first judgment. The practice has been, in case of any defect, or deficiency in the'bond, to require further security and not to dissolve the injunction for that cause.
It is therefore, ordered, that unless an injunction bond, as required by law, to secure the payment of the judgment confessed as a supersedeas mentioned in the bill, and in the injunction, be filed in the chancery office with sufficient sureties on or before the 12th day of March next; the said injunction as far as it relates to the *195 supersedeas, will, on application after that day he dissolved. Provided a copy of this order be served on the complainant Williams, or his counsel, or either of the superseders on the judgment so confessed, before the 7th day of March next.
In compliance with this order the plaintiffs fded another bond, in the condition of which the judgment confessed as a supersedeas was expressly recited in the usual form, which bond they submitted for approbation.
10th March, 1810. — -Kilty, Chancellor. — The within bond is received for the present. If any. objection should be made thereto, and ruled good, a further time will be fixed for the execution of another bond.
On the 7th of July, 1810, the defendant, David Stewart, put in his separate answer, by which he explained away or denied most of the principal facts and circumstances slated in the bill. And on the 6th of August, 1810, David C. Stewart filed his answer, in which he refers to, adopts, and relies upon the answer of his partner and co-defendant, David Stewart.
12th September, 1810. — Kilty, Chancellor. — The motion to dissolve the injunction in this case came on to be heard according to notice at the present term, and was fully argued by the counsel on each side.
In this case, as in others of a similar nature, whatever might be the result on the final hearing, it would be proper to continue the injunction if the answer was evasive and not full; if the answer did not deny the facts on which the equity of the complainants rested; and also if the books and papers, exhibited in compliance with the prayer of the bill, shewed, that the facts were different from what the defendant conceived and represented them to be. But the answer of the defendant Hall certainly contains a full and complete denial of the equity stated.in the bill; and the documents called for by the complainants, go more to corroborate than to weaken that denial; and Hall’s answer is also sustained by those of Stewart Sc Son, filpd since the notice of the motion to dissolve.
Among the points, deducible from the charges made in the bill, the most important is, that the complainants Hillen and Williams were not interested with Stewart & Son in the Holstein.. It would malee an end of the case, and was therefore most strenuously urged by. the complainant’s counsel. But it is a remarkable circumstance, that, although the bill may be said to be argumentative with a view of inducing the court to believe this to be the fact, it is not in any part-thereof expressly stated to be so. And the Chancellor is more particularly induced to notice this circumstance, from his recollection of having pointed it out as one of the objections to the bill that was first filed.
Upon the whole it is ordered, that the injunction heretofore issued in this case, be and the same is hereby dissolved.
The plaintiffs, by their petition, filed on the 9th of February, 1811, without oath or affidavit of any one, stated, that they believe, that further answers and documents which David Stewart could make and produce, relative to the matters and things contained in the bill of complaint, would materially promote the developement of the facts alleged in it, and particularly the following books, papers and documents, viz.: The ledger of the said David Stewart & Son, from the beginning of the year 1799, till the dissolution of their partnership ; their journal, day book, &c. &c. And therefore pray, that David Stewart & Son may be ordered to *196 produce in court all the aforesaid books, papers and documents, if in their possession or control; or if not, that they state particularly what has'become of them, and in whose possession or control they now are.
11th February, 1811. — Kilty.—Chancellor,—The Chancellor has considered the within petition. The order prayed for cannot be made without a compliance with tile requisites of the act of 1798, ch. 84.
After which one of the plaintiffs, Williams, filed his affidavit of the truth of the facts and allegations stated in their petition, asking for the production of books and papers.
15th February, 1811. — Kilty, Chancellor. — On considering again the within petition, together with the affidavit now annexed thereto: it is required and decreed, that David Stewart and David C. Stewart, defendants in the suit referred to, in the said petition, do forthwith produce to this court, the following hooks and papers, viz.: The ledger of David Stewart & Son, from the year 1799, till the dissolution of their partnership, &c. &c. or that they forthwith produce to this court copies of the said several hooks and papers certified by a justice of the peace ; if the said books and papers respectively are in their possession or power. Provided, that inasmuch as the application is made by petition, and not by motion in court; any motion or cause shewn against this requisition and decree will be heard at any time during the first week of the ensuing February term.
A solicitor of the deferidants having been, heard in shewing cause against making this order absolute;
25th March, 1811. — Kilty, Chancellor. — During the present term, cause was shewn by R. G. Harper, counsel in this suit for Hall and Stewart, against the above decree; but on considering the argument urged by him, the Chancellor docs not think the cause shewn to be sufficient against the said decree, which therefore remains absolute except as to the time of producing tile said books and papers. Provided, that a copy of this order and of the said decree be served on the said D. Stewart and D. C. Stewart, or either of them, before the 10th day of April next.
On the 25th of July, 1S11, David Stewart by his petition, on oath, stated, that the firm of David Stewart & Son being embarrassed in their commercial concerns, transferred all their property, estate and effects, including their books, papers, letters and accounts of every description, to Elias Ellicott, William Winchester, and John Munnykhysin who is since deceased, in trust for the benefit of their creditors; that David Stewart was appointed by them their agent to settle the affairs of the firm of David Stewart &c Son, and in that capacity he has ever since held possession of those books and papers; that Ellicott the trustee objects to the removal of them; and therefore this defendant David Stewart submits, whether they are so far in his possession and control as to enable him to comply with the requisition.
25tó July, 1811. — Kilty, Chancellor. — The Chancellor has already passed such orders on the subject mentioned in the within petition as he thought proper. If the books and papers were in tire possession of any other person, he would be ordered to produce them. The sentiments expressed by Elias Ellicatt, and his unwillingness to have the books removed, can have no effect on the court, and are not proper to be stated as an excuse for not complying with the order thereof.
After which the defendant having failed' to produce all the papers as ordered:—
*197 27th September, 1811. — -ICilty, Chancellor. — On motion of the petitioners, it is Ordered, that Stewart &, Son produce and lodge in this court, such of the papers mentioned in the former order as are not yet exhibited, before the first d'ay of November next.
After which, the case having been brought oh for a final hearing, it was, on the 29th February, 1816, decreed, that the defendant Hall pay or refund to the plaintiffs the sum of $7,359 55, with interest from the 17th May, 1808, and costs.
Chapline v. Beatty. — This bill was filed on the 9th of January, 1807, by Joseph Chapline against Charles A. Beatty, Abner Eitchie, John T. Mason, and James Williams. It states, that the defendants Beatty and Eitchie had, as administrators of Charles Beatty, deceased, obtained a judgment in an action of debt against this plaintiff, for £351, with interest thereon from the 16th of February, 1791; and in an action on the case they had also obtained judgment against this plaintiff for the sum of £534 3s. 5d., bearing interest from the 4th of December, 1801; which judgments were rendered at the same time upon an agreement between this plaintiff and the defendants Beatty and Eitchie, that there should be such deductions and discounts from them as could be made to appear within a limited time, to Walter S. Chandler; that -this plaintiff had produced his vouchers to the arbitrator Chandler, who postponed the consideration of the matter to another time; that the defendants Beatty and Eitchie then produced other claims against this plaintiff, not embraced by the judgments; that the arbitrator, without notice to this plaintiff, or paying due regard to his vouchers, made and returned an award before the appointed time, by which he gave to this plaintiff credit for less than he was entitled to, and applied the payments to one of the judgments only, leaving the other to bear interest from the longest time; that afterwards the judgment in the action of debt was entered for the use of John T. Mason; and that in the action on the case for the use of James Williams, who had caused writs of fieri facias to be issued and levied on the property of this plaintiff for the whole amount. Whereupon the plaintiff prayed for general relief, and for an injunction to stay the further proceedings at law.
The plaintiff gave two separate injunction bonds, one to the defendants Beatty and Eitchie, for the use of Mason, and the other to Beatty and Eitchie, for the use of Williams, for the respective amounts of the several judgments.
9th January, 1807. — Kilty, Chancellor. — Let subpoena and injunction, or injunctions issue as prayed; provided, that any motion for dissolving shall not be delayed for want of the answers of the defendants Mason and Williams.
On the 18th of May, 1807, all the defendants put in their answers, in which they denied all the material matters of fact upon which the plaintiff’s equity was founded. The answers of Beatty, Eitchie, and Mason, were sworn to before a justice of the peace, in the District of Columbia; and the clerk of Washington county, of that District, certified, that he was then and there duly commissioned as a justice of the *198 peace. Upon these answers the defendants gave notice of a motion to dissolve; and on the 7th July, 1807, the injunction was thereupon dissolved.

 Bridgman v. Green, 2 Ves. 629.

 Osborn v. U. S. Bank, 9 Wheat. 832; Field v. Holland, 6 Cran. 24.

 Anonymous, 9 Ves. 512; Depeyster v. Graves, 2 John. Ch. Ca. 148.
Tong v. Oliver. — This bill was filed on the 22d of October, 1803, by William Tong against Richard Oliver, and also Robert Berry and Peter Snyder, administrators of Benjamin Abbot. It states, that the plaintiff, in the year 1798, purchased of the intestate a tract of land in Pennsylvania; that he paid part of the purchase money, gave his bond for £300, being the balance, and obtained possession of the land; that Abbot gave an order on this plaintiff in favour of the defendant Oliver, for the whole sum due on the bond; that on presentation of the order, the plaintiff paid £ 200, and executed his bond for the remaining £100 to, and in the name of the defendant Oliver; that the land was subject to an incumbrance for £32 at the time of the sale, which the plaintiff would be compelled to pay and satisfy; and yet, that suit had been brought on the bond, judgment obtained, and an execution levied on the plaintiff’s lands; that Abbot is since dead, and the defendants Berry and Snyder were his administrators; upon which an injunction was prayed for and granted to stay the proceedings at law.
On the 19th May, 1808, the defendants Berry and Snyder put in their joint answer; the purport of which is sufficiently noticed in the Chancellor’s order. On the same day, the defendant Oliver not having answered, they obtained the usual order to give notice of a motion to shew cause why the' injunction should not be dissolved at the next term.
1st March, 1809. — ICilty, Chancellor. — The motion for dissolving the injunction was made by the defendants’ counsel, no counsel for the complainant being in court. But as, according to the rule and practice of the court, the defendants would have been entitled to a dissolution, if the answers were considered sufficient, it is *199 deemed proper to determine the case as it stands, without any argument hy the complainant.
The answer of Oliver is not filed. The Chancellor, without giving a positive opinion, is inclined to think, that unless it should be shewn, that he had some knowledge of the transaction, or that his answer might be material, it might be dispensed with, as he was only the nominal plaintiff at law.
But the answers of Berry and Snyder are not considered sufficient. The answers of administrators must always'be taken with a view to the reasons for their belief or knowledge of facts. In this case they state such contradictory circumstances as give room to doubt their knowledge of them.
The bill states, that the £300, for which the plaintiff gave his bond, was the half of the purchase money. The answer, without a positive denial of that feet, speaks of it as the whole consideration. The defendants allege, that tire £200, received by Oliver from Tong, included the £32 lien on the Pennsylvania tract; and they after-wards state, that Tong purchased the land subject to that incumbrance, and many others; and the argumentative part of their answer, as to the £300, has been already noticed. They further allege, that they believe the £ 32 was taken into consideration in Tong’s bond to Abbot; and, that they knew it was deducted in the bond given to Oliver. So that, according to their statement, this sum has been twice allowed; although the land was sold subject to it.
It appears on the whole, that it will be the most equitable course to continue the injunction till final hearing or further order, with a view to ascertain the real state of the transaction; and it is ordered to be continued accordingly.
After which the responding defendants, with a view to urge forward the plaintiff to extract an answer from the defendant Oliver, or to bring the case to a final hearing, called on the court to compel him to proceed.
29th December, 1309. — Kilty, Chancellor. — On application of the defendants, rule further proceedings by the fourth day of February term, 1810 ; provided a copy of this order be served on the complainant, or his counsel, before Hie first day of February next.
On the part of the responding defendants, the case was afterwards again submitted to the court on notes by the defendants’ solicitor, in which it was stated, that this cause stands under a rule further proceedings, which expired on the fourth day of February term; that Oliver had not answered, and the responding defendants had no means of compelling him to answer. .Upon this state of the case the defendants, who had answered, prayed a dismissal under the rule; or that the injunction be dissolved, upon such terms as the Chancellor may deem proper.
7th April, 1810. — Kilty, Chancellor. — On that part of this application, praying for a dissolution of the injunction on the former notice, the Chancellor refers to his order of the 1st of March, 1809. On that part praying for a dismissal on the rule, the Chancellor considers the session of the court is not at present open for such a motion. And on the application in writing by the counsel for the complainant, it is ordered that a commission issue to the persons named by him, unless commissioners are named by the defendant so as to he struck before the first day of May next. Frovided a copy of this order be served on the defendant’s counsel before the 20th inst.
After which a commission was issued, testimony taken, and the case submitted fox final hearing; without the answer of the defendant Oliver.
*200 23d May, 1810. — Kilty, Chancellor. — The commission, -which was ordered, at the present term, has been returned, and the case is submitted for final hearing; an abstract being- made on the part of the defendants.
Although the real state of the transaction is not discovered very clearly from the proceedings; yet, as it appears in proof, that the complainant refused to produce the agreement, thereby adding weight to the testimony of Peter Snyder respecting it, it is not considered necessary to continue the injunction in force. Whereupon it is Decreed, that the injunction be dissolved, and the bill dismissed, but without costs.

 Gow. Part. 179.

 Paul v. Nixon. — This bill was filed on the 25th of August, 1796, by John Paul against John Nixon, Benjamin Fuller, John Donaldson, and David H. Cunningham, surviving executors of William West. The bill states, that the plaintiff had, on the 23d of December, 1777, given his bond to the defendants’ testator, with a condition for the payment of the sum of four hundred pounds, which he signed without reflection as to the interest reserved; that to correct the mistake in this respect, the defendants’ testator, soon afterwards, signed and delivered to the plaintiff a written agreement, whereby he, the obligee, agreed that he would demand no more than three per cent, per annum until the debt was paid; that this agreement the plaintiff had lost; that the defendants had brought suit and obtained judgment for the whole amount, with legal interest, without giving him credit for certain payments, which he had made; and without having the sum really due adjusted, according to the terms upon which the judgment was given, which were, that the amount of interest accruing on the bond should be ascertained by William McLaughlin.
*201 Whereupon, the plaintiff jprayed for an injunction to stay the proceedings at law, &c., which was granted as prayed.
The defendants put in their answer, in which they admit, that they had obtained a judgment as stated; and as to the agreement, they aver that they have no knowledge of it; but they say, that they verily believe, that there never Was any such instrument of writing made by their testator.. In regard to the payments alleged to have been made by the plaintiff, the answer is entirely silent.
Upon these circumstances the case was submitted on the notes of the solicitors of the parties.
7th January, 1800. — Hanson, Chancellor. — This cause is before the Chancellor on a motion to dissolve made on filing the -answer. The bill, answers, exhibits, arguments of counsel in writing, and all other proceedings, have been by him read and considered.
By the written argument of the defendants’ counsel, the Chancellor is informed, that they submit the cause for final decision on the bill and answer, but there is no submission on the complainant’s part; and it is only the motion to dissolve, which was made as aforesaid by the defendants’ counsel on putting in their answer, that the Chancellor can decide on at present without the complainant’s consent.
In fact the principles and practice of this court seem, on this occasion, not to have been recollected. It is therefore proper to say something relative to the said principles and practice.
When a bill is filed stating, on oath, just grounds to be relieved from a judgment at law, the complainant, on filing likewise a bond with sureties approved by the Chancellor, for securing to the defendants the money recovered nisi, &.c. obtains an oTdef for an injunction, which is to continue until further order. If the defendant, by his answer on oath, denies those matters, on which the injunction was obtained, on motion to the Chancellor he generally obtains an order dissolving the injunction. The complainant, however, if he thinks proper, may proceed, after the dissolution, to establish, by proof, the allegations of his bill; and if he succeeds, either the injunction is renewed, or other relief is granted by the final decree, as is proper for the circumstances of the case.
Every complainant, on the filing of the answer by the defendant, is entitled to have the cause set down for final hearing on the bill and answer. And for this plain reason : by so doing he admits every thing contained in the answer to be true, and that nothing contained in his bill is true except what is admitted by the answer! So that it is impossible for the defendant to be injured by a submission on bill and answer. But, if a defendant were entitled to have the cause set down on bill and answer, it is plain, that he could thereby preclude the complainant from the opportunity of establishing his bill by indifferent testimony, and would in short have the cause only in his own power. Eor, -it cannot be unknown, that on final hearing, nothing alleged in the bill Is to be considered as established unless admitted by the answer, or proved by indifferent testimony. If indeed the defendant were entitled to have the cause set down for final hearing, on biE and answer, it must be on terms similar to those of the complainant’s setting down; viz. that every thing contained in the bill is true, that is to say, the rule must be reversed. But there is no such practice, nor does it by any means, in the present cas,e, appear to be the meaning of the defendants to admit the complainant’s allegations. On the contrary, they have denied, so far as they can deny, the said allegations.
There never has been a case in this court, where the defendant had less reason *202 than the present defendants have, to expect success on a motion to dissolve, made on filing the answer, without any submission on the part of the complainant for a final decision. Had the complainant made such a submission, it would have amounted to a total abandonment of his application for relief) because in case of such submission, as has already been said, every part of the answer would be considered as admitted; and no part of the bill, except what is admitted by answer, would be of any avail. Of course the decree would be for immediate dissolution and dismission of the bill.
The injunction was granted oil two grounds. The bill alleged, 1st, an agreement in writing of the deceased to take only three per cent, interest, instead of six, for which judgment is entered : 2d, the payment of a sum for which no credit is given. The answer does not expressly deny the agreement; although the defendants say they do not believe that it ever existed. As to the payment, which is the most substantial ground, the answer says not a syllable. How then is it possible, on the present motion, to expect an order for dissolution.
The Chancellor has taken the trouble of giving a full explanation ; because it is; his custom, aim, and wish, to have the principles and practice of this court understood, and particularly where some of the parties are not residents of this State.
As the counsel complains of delay, and mentions the anxiety of his clients to obtain an early termination of this cause, the Chancellor must aver, that little delay has proceeded from this court. He will go further, as he conceives he may do with propriety, and suggest what is proper to be done for expediting the cause. The defendants may obtain a rule for further proceedings, &e. This will either oblige the complainant soon to take out a commission, or will soon put him out of court. And if a commission be taken out, a little diligence and vigilance on the part of the-defendants will obtain an early return of the commission; or.put it in their power to shew, that delay is sought by the complainant.
Now in cases of injunction, obtained on filing the bill, the Chancellor has always thought it his duty to discourage, as much as he could, consistently with a fair-administration of justice, all studied or needless delay on the part of the complainant.
It is ordered, that the injunction in this cause heretofore issued, shall continue until final healing or further order.
After which, on the 17th of December, 1S03, by direction of the plaintiff, the injunction was dissolved, and the bill dismissed with costs.