M'MECHEN vs. THE MAYOR, &c. OF BALTIMORE.

DECEMBER.

ERROR to the general court. This was an action of debt
brought the 8th of April 1801, in the names of the defend-
ants in error, for the use of *A. Storey*, on a writing obliga-
tory bearing date the 23d of January 1799, executed by
*Thomas Yates* and *Archibald Campbell*, with *David Stewart*
and the plaintiff in error, their sureties, to *The Mayor and
City Council of Baltimore*, (the defendants in error,) in the
penal sum of $30,000 current money, reciting, that

Whether or not
a corporation can
appear to and pro-
secute an action,
unless by an at-
torney legally au-
thorised by letter
of attorney under
their corporate
seal? *Quere*
A warrant of
attorney need not
be spread on the
record.
The appellate
court cannot tra-
verse, out of the re-
cord, but will

make every necessary intendment in support of the judgment of the inferior court.
A judgment by confession is an admission of the right of the nominal plaintiff to recover the penalty
of a bond having a collateral condition; and whether the judgment is in the right of the plaintiff,
or for the use of another, is not material, and cannot be a cause for reversing it.
The court will not so construe the recital in a bond as to defeat its operation and render it a
nullity.
An act of assembly directing that an auctioneer shall give bond before he obtains a license, if the
fact was that the license was obtained prior to the execution of the bond, it was capable of proof, and
in the power of the defendant to have availed himself of it on his plea of general performance, and
insisting on that fact in his rejoinder to the plaintiff's replication assigning the breach.
A surety is not answerable beyond his engagement.
Where a defendant, having pleaded general performance to a bond with a collateral condition,
and without a replication on the part of the plaintiff assigning breaches, withdrew his plea, and
confessed judgment—*Held*, that such judgment admits the plaintiff's claim to the extent of the pe-
nalty of the bond on which the action was brought.
A repealing ordinance cannot destroy or affect any right which was acquired by any person
under the first ordinance before its repeal.
A person who entrusted an auctioneer with the sale of goods, and has a claim against him for
money arising on the sale, has a right to apply for and direct a suit on the auctioneer's bond for the
recovery of his claim. *(Note.)*

"whereas the above bound *Thomas Yates* and *Archibald Campbell* have obtained from the mayor a license of admission, under the seal of the corporation, to use and exercise the trade or business of auctioneers; and by an ordinance of the corporation, persons obtaining such license are directed, before they enter upon the functions or duties of the office, to give bond for the faithful performance of the several trusts and duties required of them by the aforesaid ordinance;" and conditioned, "that if the above bound *Thomas Yates* and *Archibald Campbell*, do and shall pay and satisfy all just claims that may be against them as auctioneers, and shall and will faithfully execute the office and employment of auctioneers, and in all things well and faithfully perform the several duties required of them by the ordinance, entitled, '*An ordinance for licensing and regulating auctions within the city of Baltimore and precincts thereof*, then this obligation to be void, otherwise to be and remain in full force and virtue." Which bond was endorsed, "Approved, January 24th, 1799. *James Calhoun*, Mayor of the city of *Baltimore*." The defendant in the court below pleaded *general performance*; but afterwards relinquished his averment, and confessed judgment, which was entered for the amount of the penalty in the bond, the debt in the declaration mentioned, and costs; and which by agreement was to be released on payment of $4154 30, with interest thereon from the 1st of January 1800, and costs. The defendant afterwards brought the present writ of error.

The cause was argued before CHASE, Ch. J. BUCHANAN and GANTT, J.

*M'Mechen*, for the plaintiff in error, contended, that it did not appear by the record that there was any authority from the *Mayor and City Council of Baltimore* to authorise any person to prosecute this action. A corporate body cannot appear in person, or by attorney, to prosecute or defend a suit, unless by letter of attorney under their corporate seal. 1 *Blk. Com.* 502. 503. To enable an attorney to appear for a corporation, he must be authorised, by warrant of attorney, under their common seal. It does not appear by the record that there was any warrant of attorney authorising any attorney, or other person, to institute or prosecute this action; if such authority was given

it should have been certified in the record.] Special errors, assigning that there was no such warrant of attorney, were offered at the last term, but general errors having before been assigned, they were refused to be received by the counsel for the defendants in error. They had notice therefore, that under the general errors, the want of a warrant of attorney would be relied on by the plaintiff in error. The special error, that there is no warrant of attorney certified in the record, is relied on, and now offered to be assigned; and it is prayed, on the part of the plaintiff in error, that a *certiorari* may issue, directed to the keeper of the records of the late general court, requiring him to certify whether or not there is any warrant of attorney in this action. That a writ of *certiorari* should be granted in this case, fully appears in *Lill. Ent.* 227, 253, 352, 556, 558, 560.

1806.

M'Mechen
vs
The Mayor, &c.

*Key* and *Harper*, for the defendants in error. The writ of *certiorari* ought not to be granted for the purpose alleged. The practice of our courts is to consider the appearance of an attorney for either party to be regular, and that he had sufficient authority to do so. In the case of a common person it has always been so considered, and there is no reason why it should be otherwise in the case of a corporate body. The warrant of attorney is no more necessary in the one case than it is in the other. If the writ of *certiorari* were to issue, and it was certified that there was no warrant of attorney, this court would presume the attorney had authority; and if he had no such authority, the corporation had their remedy against the attorney for an improper use of their name against their consent. In the case of *The Corporation of the Roman Catholic Clergymen's Lessee vs. Hammond*, 1 *Harr. & Johns.* 580, there was no warrant of attorney, and no objection for the want of it was made. It is every day's practice to use the name of the state in actions on public bonds, without any special directions for that purpose.

*Ridgely* and *M'Mechen*, in reply. The case of *The Corporation of the Roman Catholic Clergymen's Lessee vs. Hammond*, was an action of ejectment, wherein a demise was stated to have been made to a lessee, and the action was brought in the name of the lessee. That case, therefore, has no bearing on the question before this court. It is by common consent that an attorney appears for an individual

without a warrant of attorney, but were an objection made, the court would not permit it. The books, however, are explicit, that a corporation, being an invisible body, cannot appear in person, but must appear by attorney, authorised by warrant of attorney under their corporate seal; and it is fatal unless there be such authority. With respect to the name of the state being used, there is an express act of assembly authorising it in suits on testamentary, administration, sheriffs, and other public bonds.

CHASE, Ch. J. The court consider that it is not necessary to spread the warrant of attorney on the record. Every thing will be intended in support of the judgment, unless the contrary appears.

*M'Mechen*, for the plaintiff in error, then contended—
1. That the bond was not taken in conformity to the ordinance of the Mayor and City Council of *Baltimore* of the 12th of December 1798, but was entered into after, instead of before the license was granted. He referred to that ordinance; also to *The Inhabitants, &c. of Chittinston vs. Penhurst*, 1 *Salk.* 475, and *Rex vs. Croke, Cowp.* 26.

2. That the ordinance, under which the bond was taken, was repealed previous to the bringing this action; and as the repealing ordinance saved no rights, the action could not be supported. He referred to the act of 1796, *ch.* 68, *s.* 8. *Miller's* case, 1 *W. Blk. Rep.* 451. 6 *Bac. Ab.* tit. *Statute,* (D.) 372. and *Rex vs. The Justices of London,* 3 *Burr.* 1456.

3. That this action is stated to be brought in the names of *The Mayor and City Council of Baltimore*, at the instance and for the use of *Alexander Storey.* He referred to *Martyn vs. Hind.* 1 *Doug.* 142. The acts of assembly October 1780, *ch.* 30. May 1781, *ch.* 11; 1784, *ch.* 61; 1790, *ch.* 12; and 1796, *ch.* 68.

4. That in a suit on a bond against a surety, it must be shown that he is bound. That a surety is not bound beyond the scope and extent of his engagement, which are confined to the strict letter of the bond. He referred to *Wright vs. Russell,* 3 *Wils.* 530. *Sloss vs. Galloway,* 3. *Harr. & M'Hen.* 204. *The State vs. Wailes, Ibid* 241. *Straton vs. Rastall,* 2 *T. R.* 366. *Quynn vs. The State,* 1 *Harr. & Johns.* 36.

5. That there was no replication assigning the breaches; and that the confession of judgment did not cure the defect. He referred to *Gwynn vs. The State,* 1 *Harr. & Johns.* 36. *Hardy vs. Moore's Ex'rs,* 5 *Harr. & M'Hen.* 389. *Bowie vs. The State, Ibid.* 408. *Dorsey vs. Stevenson's adm'r. 4 Harr. & M'Hen.* 351. *Green's adm'r. vs. Couden's adm'r. Ibid.* 352.

*Key* and *Harper,* argued for the defendants in error.

CHASE, Ch. J. delivered the opinion of the court. The court cannot travel out of the record, but will make every necessary intendment in support of the judgment of the inferior court *(a.)*

The judgment by confession is an admission of the right of *The Mayor and City Council of Baltimore* to recover the penalty of the bond; and whether it is in their own right, or for the use of another, is not material, and cannot be a cause of reversing the judgment.

According to the record, and the nature of the transaction as disclosed by it, the legal and necessary intendment is, that the bond and license were given on the same day, and that the execution of the bond preceded the granting of the license, because the nature of the transaction required it.

The court cannot so construe the recital in the bond as to defeat its operation, and render it a nullity; such an exposition would be a violation of the plainest principles of law and justice.

If the fact was, that the license was obtained prior to the execution of the bond, it was capable of proof, and in the power of the plaintiff in error to have availed himself of it, by retaining his plea of general performance, and insisting on that fact in his rejoinder to the replication of the defendants in error assigning the breach.

That the security is not answerable beyond his engagement, is a position that cannot be controverted.

In this case the plaintiff in error, as security, reposed a confidence in the principals, the auctioneers, and not in the mayor; and actually engaged that the auctioneers should pay and satisfy all just claims against them as auctioneers;

*(a)* If by any means whatever the plaintiff can be supposed to have a title as laid in the declaration, as this is after verdict, we will hold this judgment right, and there is no inconsistency. 3 *Wils.* 1. 3 *Burr.* 1725, 7.

1806.

Haffner
vs
Dickson

and the judgment, by confession, admits the claim of *The Mayor and City Council of Baltimore*, against the plaintiff in error, to the extent of the penalty of the bond, subject to the release on the record.

The repealing ordinance cannot destroy or affect any right which was acquired by any person under the first ordinance before the repeal thereof.

JUDGMENT AFFIRMED *(a.)*

(*a*) The court were also of opinion, (though as this point was not before them, they omitted it in the written opinion which was delivered,) that every person who entrusted the auctioneers with the sale of goods, and had a claim against them for money arising on the sale of the goods, has a right to apply to the mayor and city council to direct a suit to be instituted on the bond of the auctioneers for the recovery of his claim, and the corporation could not, consistent with their duty under the ordinance, refuse such application, and might be enjoined, by suit in chancery, to allow the person to use their name to prosecute his claim.