# SUPERIOR COURT OF BALTIMORE CITY.

Filed November 17, 1924.

___

HOWARD W. JACKSON, ET AL., VS.

CHARLES D. GAITHER, COMMISSIONER OF POLICE.

___

*Philip B. Perlman*, City Solicitor, and *Wirt A. Duvall, Jr.*, Assistant City Solicitor, for plaintiffs.

*Thomas H. Robinson*, Attorney-General, and *E. H. Burke*, Assistant Attorney-General, for the defendant.

STEIN, J.—

This is a petition, filed by the members of the Board of Estimates of the city officially and as taxpayers, for a writ of mandamus, directing the defendant, the Police Commissioner of the city, "to take, in the exercise of his discretion, such steps as he may think proper, to enforce City Ordinance No. 105," which makes "a misdemeanor, punishable by fine, any person acting in that city as an auctioneer, without first having obtained and paid for, the license named in that ordinance; unless such person is so acting under some official authority under the laws of the United States."

The Commissioner's answer states, he will not take any steps to enforce that ordinance, because he is advised by the Attorney-General of Maryland, his official advisor, that the ordinance is unconstitutional; the petitioners demurred to this answer, thereby intending to raise, the question of the constitutionality vel non of the ordinance, which was the only question argued at the hearing on the demurrer; and is the only question considered here.

The petitioners claim the ordinance is a valid exercise of the powers conferred upon the City by Article 11-A, of the State Constitution, commonly called the "Home Rule Amendment," which, on November 2nd, 1915, under Chapter 146 of the Acts of 1914, was submitted to and adopted by popular vote of the whole State: and, in Williams vs. Broening, and Jones vs. Broening, 135 Md., pp. 226, etc., and 237, etc., the Court of Appeals held validly adopted.

The respondent claims, the amendment, does not authorize the ordinance, because among other things, if valid, it would deprive the State of its revenue and police power.

The amendment empowers the City of Baltimore "to adopt a charter that would give it the exclusive right to manage its local affairs," so as to relieve the General Assembly from the increasing and useless burden of local legislation, and to prevent the General Assembly from thwarting the local will by enacting local legislation conflicting with local ordinances. The City of Baltimore adopted such a charter under which it passed Ordinance No. 105.

The controlling words of the amendment are:

Section 1. "Said Charter (i. e., that adopted under the amendment), shall become the law of said city * * * *subject only to the Constitution and Public General Laws of this State*," and "all inconsistent public local laws and any former Charter of the City shall be thereby repealed."

Section 2. "And the powers heretofore granted to the City of Baltimore and set forth in Article 4, Section 6, Public Local Laws of Maryland, *shall not be enlarged or extended by any Charter formed under the provisions of this Article*, and such powers may be extended, modified, amended or repealed by the General Assembly." * * *

Section 3. "From and after the adoption of a charter by the City of Baltimore * * * as hereinbefore provided, the Mayor and City Council

of Baltimore * * * subject to the Constitution and Public General Laws of this State, shall have power *to enact* local laws enacted by the Mayor and power to *repeal or amend* local laws of said city * * * enacted by the General Assembly, upon all matters covered by the express powers granted as above provided." * * * "All such local laws enacted by the Mayor and City Council of Baltimore * * * as hereinbefore provided, shall be subject to the same rule of interpretation as then were applicable to the Public Local Laws of th's State, except that in case of any conflict between said Local Law and any Public General Law now or hereafter enacted the Public General Law shall control."

Section 4. "From and after the adoption of a charter under the provisions of this Article by the City of Baltimore * * * *no public local law shall be enacted by the General Assembly for said city * * * on any subject covered by the General Assembly for said city * * * on any subject covered by express powers granted as above provided*. Any law so drawn as to apply to two or more of the geographical sub-divis'ons of this State shall not be deemed a local law within the meaning of this Act. The term geographical sub-division herein used shall be taken to mean the City of Baltimore or any of the counties of the State."

Having adopted a charter under the provisions of this amendment. the City of Baltimore has (a) power to enact local laws; (b) full power to repeal, or amend local laws affecting it enacted by the General Assembly of Maryland, provided, however, that:

(c) The exercise of such powers shall be subject to the Constitution and Public General Laws of the State.

(d) The express powers granted to the City of Baltimore set forth in Article 4, Section 6, of the Public Local Laws (commonly called the City Charter) shall not be enlarged or extended by any charter formed under the amendment; but such powers may be extended, modified, amended or repealed by the General Assembly.

So that the question here is:

Does Ordinance No. 105 conflict with anything in the Constitution or in the Public General Laws, or with anything in Article 4, Section 6, Public Local Laws?

The respondent also contends that this Constitutional Amendment does not authorize the ordinance, because:

1. The Legislature cannot deprive the State of its police power or of its taxing power, and there is always a reserve power in the Legislature to get back at any time any part of its police or taxing power it surrendered.

2. The acts sought to be repealed and amended by the ordinance are not Public Local Laws but are Public General Laws, and within the inhibition of the amendment.

Does the ordinance enlarge or extend the police power and/or the power to license, tax and regulate heretofore granted the City of Baltimore by Section 6, of Article 4, of the Public Local Laws?

The police powers granted by that section are contained in the following words: Sub-section 18, page 25, of the City Charter, 1915 Edition:

"To have and exercise within the limits of the City of Baltimore all the power commonly known as the police power to the same extent as the *State has or could exercise said power within said limits."

In discussing which in Rossberg vs. The State, 111 Md. 412, the Court of Appeals said:

"Broader or more comprehensive police powers could not be conferred under any general grant of police power for the purpose mentioned in Section 18 than those granted in that section. * * *

(412) In the present case, the legislative grant is not merely one of power to pass ordinances relating to specified police powers, regarded as part only of the *general* police power, but the grant is of *all the power* commonly known as the police power, to the same extent as the State has or could exercise said power within said limits. This implication, therefore, is a necessary one that * * * the Legislature intended *the city to have, in addition, the power to pass ordinances for any and all purposes relating to the exercise of the police powers."

As the section in question of the charter contained a grant to the city of all the State's police powers, Ordinance No. 105 cannot enlarge or extend such power.

The taxing and licensing powers granted the city are set out in said Section 14 of Section 6, of Article 4, Public Local Laws, (supra), sub-title Licenses, City Charter (ibid.) page 21, as follows, viz.:

"To license, tax and regulate all business, trades, avocations or professions," on which is based the city's power to license and tax auctioneers.

In Meushaw vs. The State, 109 Md. 84, at 91, the Court of Appeals, in discussing this grant of power said:

"Much larger and broader powers are granted to the city under the new charter. * * * Under Section 6 of the Charter, the Mayor and City Council is given the power to license, tax and regulate all businesses, trades, avocations or professions; and under this grant of power the city had the clear right to reimpose the charge of two hundred dollars for the use and privilege of selling in this market (i. e., the wholesale produce market)."

A clear recognition by the Court of Appeals of the city's right to license and tax businesses; so that Ordinance 105 does not enlarge or extend any part of the power to tax or license granted the city in Section 6 of Article 4, supra.

As the cases above cited sustain similar powers granted to the city by the former city charter, the ordinance here attacked does not conflict with the Constitution or any public general law.

The objection of the respondent's counsel, that this ordinance deprives the State of its police and taxing powers, also ignores the fact, that the ordinance is authorized by a valid constitutional amendment, and not by an act of the Legislature, and while it may be that the Legislature cannot surrender or delegate its police or taxing power beyond recall, yet such rule does not forbid the State's grant of those powers to a municipality by a constitutional amendment, which puts their recall beyond the Legislature, such grant, however, would not prohibit the exercise of such powers by the municipality and by the State at the same time.

The next contention is that the ordinance is bad because the laws it repeals are public general laws and not public local laws.

While the words of the acts repealed shows them to be public local laws, yet,

because of the earnestness and ability with which counsel insisted they were public general laws, I examined all legislation upon the "appointing and licensing auctioneers," in Baltimore City; found that Section 9, of Chapter 68, of the Acts of 1796, its first charter, give the city authority "to provide for licensing and regulating auctioneers and pawnbrokers, within the city and precincts thereof," under which, on December 12th, 1798, the city passed the first ordinance on this subject, entitled "An ordinance for licensing and regulating auctioneers;" this was repealed by Ordinance No. 3, approved February 20th, 1801, which "forbade any person to exercise the trade or business of an auctioneer unless he shall have previously obtained from the Mayor a license under the seal of the corporation," the yearly charge for which was $750, and was to be paid to the city.

Each of these ordinances required auctioneers to give bond and pay fees to the City of Baltimore. In each of the McMechen cases in 2 H. & J. 41, and 3 H. & J. 534, the Court of Appeals sustained a judgment for the plaintiff in a suit on a bond given under the ordinance of 1798, thereby establishing its validity. As Luther Martin and William Pinckney argued one of these cases in the Court of Appeals for McMechen, it can be presumed that, as the question of invalidity of the ordinance was not raised, these great lawyers thought the ordinance and the city charter authorizing it, were constitutional, as did the judges of the Court of Appeals, among whom were Chief Judge Chase and Justice John Buchanan, two of the greatest judges that have graced that Court.

Under Ordinance No. 3 of 1801, the city licensed and taxed auctioneers until April 1st, 1828, when Chapter 111 of the Acts of 1827, passed March 4th, 1828, went into effect; Section 26 of which repealed all inconsistent laws. Under this act, the Governor and Council appointed auctioneers for the City of Baltimore, the license fees therefor were payable to the State of Maryland. This act was amended at least twelve times, the last time by Chapter 338, of the Acts of 1918; none of which amendments took from the State either the appointing power or the license fees.

This Act of 1827 and all the amendatory Acts, were local laws, made so

either by the title or by the words of the Act; each Act related solely to the City of Baltimore, thus meeting the definition of a Public Local Law referred to in Prince George County vs. the B. & O., 113 Md. 179-186, that "Local Laws apply to all persons within the territorial limits prescribed by the Act."

In addition to the force of this legislative history, the Constitutional Amendment, 11A, shows the Acts repealed are Local Acts; the Amendment, while it does not define what is a public local law, defines what is not a public local law, viz.:

"Any law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a local law within the meaning of this Act."

"The term 'geographical sub-division' herein used shall be taken to mean the City of Baltimore or any of the counties of the State," Sec. 4, supra.

As the Acts repealed applied only to the City of Baltimore, under the amendment they are public local laws.

The respondent's counsel claim, however, that the Acts repealed are public general laws; because under them (a) the appointing power is in the Governor and Senate; (b) the licensing power in the State, and (c) the license fees are payable to the State. This claim not only ignores the above definition in the Constitutional Amendment as well as that in the 113 Md. case, supra; but under such a rule every private act of incorporation, the terms of which impose a State tax on, or subjects the proposed corporation to State supervision would be a public general law.

The Ordinance No. 105 in question applies only to one geographic sub-division, i. e., the City of Baltimore and under the definition in the above named Constitutional Amendment, is a public local law, not a public general law. It is a valid exercise of the powers granted the city by the charter adopted under the above named amendment. The City of Baltimore, therefore, has again been granted in a much broader and more comprehensive form, the power to regulate, tax and license auctioneers granted to it in its first charter.

I will sustain the demurrer to the answer.